■ In the Matter of KENNETH H. COHN, an Attorney, Respondent. COMMITTEE ON PROFESSIONAL STANDARDS, THIRD JUDICIAL DEPARTMENT, Petitioner. [600 NYS2d 501] —Per Curiam. Respondent was admitted to practice by this Court in 1973. He maintains an office for the practice of law in Vestal, Broome County.

By petition dated September 13, 1990, and by supplemental petition dated February 26, 1991, the Committee on Professional Standards charges respondent with a number of allegations of professional misconduct.

A 19-day hearing was held in the fall and early winter of 1991 before Hon. Ross Patane, retired Madison County Court Judge. In a voluminous and exhaustive report dated February 11, 1993, the Referee found respondent guilty of 27 charges of professional misconduct covering 76 specifications. The petition and supplemental petition contained 32 charges covering 116 specifications.

Petitioner moves to confirm the Referee's report. Respon-

dent moves to disaffirm the report with respect to the charges and specifications sustained by the Referee and to confirm the report with respect to the charges and specifications not sustained by the Referee. Respondent agrees that specification 1 of charge I of the supplemental petition was properly sustained by the Referee.

Petitioner is not pursuing the charges not sustained by the Referee and those charges are not different in kind from those sustained. We confirm the Referee's report with respect to the charges not sustained.

The Referee found that respondent had neglected bankruptcy matters entrusted to him by eight clients (charges I and XII [S] ["S" refers to the supplemental petition]). The sustained specifications allege failure to follow through on and complete bankruptcy matters, mistakes on bankruptcy documents submitted to court, and delays.

The Referee sustained six specifications under charges II and III accusing respondent of violating the provisions of Bankruptcy Rule 2016 (b), which rule requires a debtor's attorney to disclose attorney fees. With respect to the inaccurate statements alleged in the five specifications of charge II, the Bankruptcy Court ordered respondent to remit $1,300 in total fees not properly reported and imposed a fine of $180 in each case. Respondent did not oppose the ordered remedy. With respect to the single specification of charge III, respondent returned a $300 fee to the clients after the Bankruptcy Trustee objected to respondent's failure to properly report it.

The Referee sustained four specifications of neglect of the Rigo divorce matter and one specification each of neglect of the Corey and Repasky divorce matters (charge V). With respect to Rigo, the Referee found that respondent failed to notarize the signature of a process server on an affidavit of service; failed to respond to a demand for a complaint; failed to obtain financial disclosure from the opposing spouse as requested by the client; and failed to proceed to trial as the client wanted. Rigo eventually discharged respondent. With respect to Corey, respondent essentially admits to an 18-month delay in a filing for an amicable divorce. With respect to Repasky, the Referee found respondent simply did not execute the elementary task of insuring proper completion of an affidavit of service.

The Referee sustained three specifications of neglect of Family Court matters under charges V (A) and XI (S) accusing respondent of failure to file a modification of support petition,

failure to follow through on one client's adoption of his 6-year old step-son, and failure to follow through on a child support modification petition.

Under specification 2 of charge VI, the Referee sustained an allegation of neglect of a real property matter. Respondent delayed effectuating a real property transfer from his client to one Govericki from the time of his retainer in September 1989 until the deed was recorded December 1, 1989, three days after his client's death.

The sustained specifications of charges I, II, III and IV of the supplemental petition concern respondent's handling of an adoption matter. He failed to file requisite documentation from his retainer in June 1989 until May 17, 1990; he failed to appear at a June 1, 1990 court conference; he failed to comply with the temporary guardianship application provisions of Domestic Relations Law § 115-c; failed to distinguish between his clients' physical custody of the baby and his inaccurate characterization of them as legal guardians in a statement to the Broome County Health Department when the baby needed medical attention; put the wrong date on an affidavit accompanying the adoption petition; failed to disclose pursuant to section 806.14 (a) of this Court's rules (Rules of App Div, 3d Dept [22 NYCRR] § 806.14 [a]) a $400 payment by the adoptive parents to the natural mother to help her pay rent during her confinement, for which payment respondent served as conduit; and represented both the adoptive and natural parents to some extent. Sustained specifications 1 and 2 of charge V (S) accuse respondent of failing to complete an uncomplicated adoption proceeding resulting in its eventual dismissal in the spring of 1989. It appears a new petition was filed a week before this disciplinary hearing commenced.

According to sustained specifications 1 and 2 of charge VII (S), 1 and 2 of charge VIII (S), and 1 of charge IX (S), respondent neglected a client's criminal matter. He failed to respond in a timely fashion to a plea bargain offer until after his client was indicted by a Grand Jury. The client discharged respondent after he failed to notify the client of a scheduled arraignment on the Grand Jury indictment until 10 minutes beforehand. The client's new attorney accepted a plea bargain. The Referee also found respondent falsely told his client he had responded to the plea bargain offer before the matter was presented to the Grand Jury.

The Referee sustained two specifications of misleading clients under charge VII. He found respondent misled client Rigo into believing he had applied for a court date for her

divorce case. He found that the Barneses had agreed to chapter 13 debt relief not knowing they were filing for bankruptcy because respondent did not properly explain it to them and because they were responding to his misleading newspaper advertisement touting "Immediate personal debt relief which [is] not a bankruptcy."

The Referee found respondent guilty of five specifications in charges VIII and XIV (S) of failing to respond to telephone calls from five clients. Also, after client Repasky discharged respondent in a divorce matter, the Referee found respondent failed to timely forward a completed affidavit of service to the new attorney at the client's request and at the attorney's request (specification 6, charge VIII; specification 1, charge X).

The Referee sustained charges of failure to cooperate with the Broome County Bar Association's investigation of six client complaints (charges XI, XV [S]) and of failure to cooperate with petitioner's inquiries and directives (charges XII, XIII, XVI [S]).

Finally, the Referee found respondent placed a misleading ad on October 11, 1989 in the Binghamton Press (specification 1, charge XV). The ad referred in bold print to a "NEW FEDERAL LAW" which would provide "DEBT RELIEF", including halting the imposition of all interest and all lawsuits. However, the reference was actually to 1979 chapter 13 bankruptcy legislation; the word "NEW" actually referred to decisional law; lawsuits could continue under certain circumstances; and only interest on unsecured debts would cease. The ad also failed to disclose that bankruptcy was the form of debt relief referred to.

Some themes reverberate through respondent's defenses and explanations. He often asserts that the Referee improperly credited a client's testimony over his own. We are, however, loathe to disturb such conclusions as the Referee is in the best position to assess credibility and we decline to do so in this matter (see, Matter of Brenner, 191 AD2d 800).

Respondent argues that some of his alleged misconduct was the result of unintentional errors in completing forms and that such failures should not sustain allegations of deceit or misrepresentation. Because venal intent is an apparent element for a violation of the Code of Professional Responsibility DR 1-102 (A) (4) (22 NYCRR 1200 [a] [4]), and the Referee did not find such intent underlying the relevant sustained specifications of charges II, III, II (S), and III (S), we decline to confirm the Referee's report with respect to such specifica-

tions, insofar as they are set forth to support a charge of deceit or misrepresentation *(see, Matter of Altomerianos,* 160 AD2d 96, 101; *see also, Matter of Russakoff,* 79 NY2d 520, 524).* However, insofar as the Referee found that the same specifications (with the exception of specification 1 of charge III) supported charges of conduct prejudicial to the administration of justice involving misstatements in official documents misleading to judicial and other governmental agencies, we confirm the Referee's findings.

Respondent also argues that unintentional mistakes should not support charges of neglect. He variously blames the neglect found by the Referee on difficult clients, clients not producing documents, strategy, office failure, and work on other matters simultaneously for the clients alleged to be neglected. However, since neglect may be considered a species of failure to act competently, we find the Referee properly sustained the neglect charges *(see, Matter of Casey,* 111 AD2d 979, 981).

Finally, respondent argues that his lack of cooperation with the Broome County Bar Association and with petitioner was not total: he did eventually respond in most cases, sometimes after trying to resolve the matter directly with the complaining client. However, since the disciplinary authorities should be accorded prompt, full and forthright cooperation, we find the Referee properly sustained such charges *(see, e.g., Matter of Casey,* 75 AD2d 664) as well as specifications 1, 2, and 3 of charge XIV alleging conduct prejudicial to the administration of justice through false (though possibly unintentional) statements to petitioner.

Other than as noted above with respect to charges II, III, II (S) and III (S), we confirm the Referee's report.

Respondent has a lengthy history of disciplinary actions imposed for misconduct not dissimilar to that alleged in the petition and supplemental petition. He was admonished by petitioner on March 5, 1981, and petitioner issued a letter of caution to him on July 6, 1981. This Court suspended respondent from practice for four months, effective December 31, 1981 *(Matter of Cohn,* 84 AD2d 882). On July 2, 1984, respondent was suspended again, for a period of two years. On that occasion a Referee sustained 27 charges of professional misconduct. We noted that "respondent's misconduct is serious, particularly that of practicing law while under suspension, and would ordinarily warrant disbarment" *(Matter of Cohn,* 103 AD2d 856, 857). Respondent was reinstated on March 19, 1987. On March 10, 1989, August 9, 1989 and May 4, 1992,

respondent received letters of caution from petitioner. On October 21, 1992, petitioner issued a letter of admonition to respondent.

Although there appears to be a lack of venal intent underlying much, if not most, of respondent's professional misconduct as well as a lack of clear client harm, other than that inevitably caused by unwarranted delays, the picture of respondent's misconduct over the past decade portrays an attorney who is simply unable to conduct his client affairs competently and in compliance with the Code of Professional Responsibility. Such an attorney is not fit to continue his membership in the profession. We therefore conclude that, in order to protect the public and preserve the reputation of the Bar, respondent should be disbarred.

Mikoll, J. P., Yesawich Jr., Levine, Mercure and Crew III, JJ., concur. Ordered that petitioner's motion to confirm the Referee's report is granted and respondent's motion to disaffirm the report is denied, except with respect to those portions of charges II, III, II (S), and III (S) charging respondent with deceit and misrepresentation; with respect to such portions of such changes, petitioner's motion is denied, respondent's motion is granted, and the said portions of such charges are hereby dismissed; and it is further ordered that, respondent, Kenneth H. Cohn, who was admitted as an attorney and counselor-at-law by this Court on February 20, 1973, be and hereby is disbarred and his name is stricken from the roll of attorneys and counselors-at-law in the State of New York, effective July 17, 1993; and it is further ordered that, respondent be and hereby is commanded to desist and refrain from the practice of law in any form, either as principal or agent, or as clerk or employee of another; and he hereby is forbidden to appear as an attorney and counselor-at-law before any court, Judge, Justice, board, commission or other public authority or to give any opinion as to the law or its application, or any advice with relation thereto; and it is further ordered that respondent shall comply with the provisions of section 806.9 of the rules of this Court ([22 NYCRR] § 806.9) regulating the conduct of disbarred, suspended or resigned attorneys.